[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 29, 2012
JOHN LEY
CLERK

No. 10-15965

_____

D.C. Docket No. 1:09-cr-00263-TWT-GGB-2

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

RANDY VANA HAILE, JR.,

Defendant - Appellant.

_____

No. 11-10017

_____

D.C. Docket No. 1:09-cr-00263-TWT-GGB-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

MARK ANTHONY BECKFORD,

Defendant - Appellant.

_____

Appeals from the United States District Court
for the Northern District of Georgia

_____

(June 29, 2012)

Before EDMONDSON, WILSON and KRAVITCH, Circuit Judges.

PER CURIAM:

Randy Vana Haile and Mark Anthony Beckford were convicted of conspiracy and attempt to possess with intent to distribute marijuana and cocaine and knowing possession of several firearms in conjunction with their drug-trafficking offenses. The district court sentenced Beckford and Haile to 438 months and 468 months of imprisonment, respectively. Beckford now appeals his conviction and sentence, and Haile appeals his conviction. After a thorough review of the record and the parties' briefs, and with the benefit of oral argument, we affirm in part and reverse in part.

I.

Haile and Beckford were charged by superseding indictment with:

conspiracy to possess at least 5 kilograms of cocaine and at least 1,000 kilograms of marijuana with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(vii), and 846 (Count 1); attempt to do the same, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii) and (vii), and 846 (Counts 2 and 3); knowing possession of 5 enumerated firearms, including a machine gun, in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A), (B)(i), and (B)(ii) (Count 4); possession of a firearm with an obliterated serial number, in violation of 18 U.S.C. §§ 922(k) and 924(a)(1)(B) (Count 6); and possession of an unregistered machine gun, in violation of 26 U.S.C. §§ 5841, 5845(b), and 5861(d) (Count 7).  Haile was also charged with possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a) (Count 5).

At trial, several Drug Enforcement Administration (DEA) agents testified about the reverse-sting operation that led to the defendants' arrest.  The agents testified that a confidential informant (CI) provided information that Beckford, who lived in Atlanta, was seeking a marijuana supplier.  At the DEA's request, the CI told Beckford about a man named Rodriguez, an undercover agent posing as a marijuana supplier.

Thereafter, the CI and Rodriguez met with Beckford in San Antonio.[1]

---

[1] The DEA recorded this meeting, as well as the other encounters between Haile, Beckford, and the DEA's undercover agents.

Rodriguez proposed a price of $300 per pound of marijuana, to which Beckford replied, "Yeah, yeah, yeah." Beckford stated that he would take 1,000 pounds, "If it's good," and that he would like the drugs to be delivered to the Jamaica Flava restaurant in Atlanta.

Before the meeting concluded, the CI asked Rodriguez, in front of Beckford, "Did you tell him about the white stuff?" Rodriguez said to Beckford, "I give you good price too." Beckford responded, "I'll call you," and the two exchanged telephone numbers. Later, on the phone, Beckford agreed to give Rodriguez a $25,000 security deposit for the marijuana and to meet with one of Rodriguez's associates, undercover agent Arrugueta, in Atlanta. At some point during the phone conversations, the two discussed guns. And the CI confirmed that Beckford had easy access to guns.

When Beckford met with Arrugueta, Haile was also present. Arrugueta asked Beckford, "Did [Rodriguez] talk to you about the tools?" Beckford replied, "Yeah, yeah, yeah. He talked to me about it." Arrugueta asked, "What kind do you have?" Beckford said, "my people . . . got the AK," which Arrugueta understood to mean any assault rifle, not just an AK-47. Arrugueta asked, "machine gun?" Beckford said, "Yep." When Arrugueta asked what Beckford's "people" wanted for the gun, Beckford said drugs, not money. Beckford said he

4

had "like six [guns] so far" to exchange in the deal. Arrugueta, Haile, and Beckford agreed to exchange two pounds of marijuana for each gun.

After Haile and Beckford left the meeting with Arrugueta, they spoke with Rodriguez, and the parties decided that Beckford and Haile would fly to San Antonio the next day to meet Rodriguez and discuss the marijuana deal. At the meeting, Rodriguez confirmed that he would deliver 500 pounds of marijuana, at a price of $300 per pound, to the Jamaica Flava restaurant in Atlanta.

Rodriguez again mentioned that he distributed cocaine, and Haile asked Rodriguez about the quality and quantity of cocaine Rodriguez distributed. Rodriguez offered to give Haile and Beckford a kilogram of cocaine for $23,000, and Haile replied, "Uh-hmm."

Rodriguez then asked what kind of "nail gun," which he and Beckford had spoken about earlier, Beckford had. Beckford replied, "It's a machine gun, AK." Then Rodriguez asked, "you want white?" Haile responded that Rodriguez "could throw two or three" kilograms onto the marijuana load. Haile told Rodriguez, "if it's good, I'd get it, like couple days probably." Rodriguez agreed. At the conclusion of the meeting, Haile and Beckford gave Rodriguez the $25,000 deposit.

A few days later, Rodriguez spoke with Beckford by phone. Rodriguez

5

said, "I got all [the] food you need for the store," and, "I also bring . . . three sugar bag for, for your friend." Beckford replied, "Yeah, 'cause I got somebody waiting." On the morning of the scheduled drug delivery, Rodriguez called Beckford and asked if he had the "power tool." Beckford repeatedly stated, "I'm working on it right now."

That same day, Rodriguez and other DEA agents staged a U-Haul trailer containing hundreds of pounds of marijuana and several kilograms of cocaine at a hotel in Atlanta. Rodriguez met with Beckford and Haile in the hotel parking lot and permitted Haile to inspect the drugs. Rodriguez then asked Haile and Beckford how much money they could pay at that time. Beckford stated that he and Haile had access to $70,000 and could probably come up with more. Rodriguez said, "and the tool?" Haile asked in response, "Oh, you want the tools now?" Rodriguez said that he did, so the three continued to negotiate Haile and Beckford's payment of guns and money. Rodriguez asked, "you bring five gun?" And Beckford replied, "Yeah." Then, Beckford and Haile left to obtain the rest of the payment.

Agents stationed at Jamaica Flava then observed several men loading large, heavy bags into the back of a truck registered to Beckford. Beckford and Haile drove the truck back to the hotel, but left the parking lot when they realized

6

Rodriguez was not present. They drove to a nearby restaurant where DEA agents arrested them.

Agents found a Glock .45 caliber pistol on Haile. In Beckford's truck, agents found: (1) $70,000 in a plastic bag in the back seat; (2) a loaded .40 caliber handgun in a holster in the center console; (3) a bag containing loose cash, Jamaica Flava business cards, and loose marijuana in the back seat; (4) two Norinco 7.62 caliber SKS rifles, one with an obliterated serial number, in the vehicle's flatbed; and (5) a 9-millimeter, an M-11 machine gun (not registered to either defendant), a bulletproof vest, and ammunition for a .40 caliber, a 7.62 caliber, and a 9-millimeter, all inside a gym bag in the flatbed.

At the conclusion of the trial, counsel for the defendants moved for a judgment of acquittal on all counts. Defense counsel specifically argued that Count 4, which charged possession of a machine gun, failed to properly allege an offense because the indictment charged the defendants with knowing possession of firearms "during and in relation to *and* in furtherance of a drug trafficking crime." (emphasis added). The district court denied the motion for judgment of acquittal, finding that the "during and in relation to" language was mere surplusage. The court struck that language from the indictment and later excluded "during and in relation to" from its jury instructions on Count 4.

Also in the motion for judgment of acquittal, defense counsel argued that the government's evidence was insufficient as a matter of law to establish that the defendants knew they possessed a machine gun. The court denied the motion, but included on the verdict forms a question asking the jury about the defendants' knowledge of the gun's characteristics.

At the charge conference, Beckford's counsel requested that the court charge the jury on "outrageous government conduct" based on the defense's theory that the government ratcheted up the defendants' charges through the sting operation. The court denied the request. Beckford's counsel also asked the district court to instruct the jury on the definition of "machine gun," and the court agreed to do so. The court, however, did not instruct the jury on the definition, even though it had agreed the instruction was proper. The jury found both defendants guilty on all counts.

At sentencing, Beckford requested a reduction based on alleged sentencing factor manipulation, arguing that the government improperly increased the amount of drugs involved in the transaction. The district court denied his request. The court emphasized that Beckford and Haile were "the ones that had this machine gun," the possession of which required a 30-year mandatory minimum sentence on Count 4.

The court ultimately sentenced Beckford to 438 months' imprisonment, which was at the low end of his guidelines range.  This included a mandatory 360-month sentence on Count 4; a 78-month sentence on each of Counts 1, 2, 3, and 7, to be served concurrently with one another; and a 60-month sentence on Count 6, possession of a firearm with an obliterated serial number, to be served concurrently with the other counts.  The court sentenced Haile to 468 months' imprisonment.  This is the defendants' appeal.

## II.

Haile and Beckford both contend that:  (1) Count 4, knowing possession of firearms in furtherance of a drug-trafficking crime, was not properly before the jury; and (2) even if Count 4 was properly submitted to the jury, the jury instructions for that charge were erroneous.  Beckford also contests:  (1) the sufficiency of the evidence in his case; (2) the district court's failure to give certain jury instructions; and (3) his 438-month sentence.  We address each of these claims in turn.

## A.

Haile and Beckford contend that the § 924(c) charge in Count 4 of the indictment was defective because it conflated the two triggers of that statute, and therefore they argue their convictions on that count should be overturned.  We

9

review the sufficiency of an indictment *de novo*. *United States v. Poirier*, 321 F.3d 1024, 1028 (11th Cir. 2003).

Section 924(c) states, "any person who, during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime," be subject to enhanced penalties enumerated in the statute. 18 U.S.C. § 924(c)(1)(A). Thus, the enhanced penalties are triggered in one of two ways: under the "during and in relation to . . . uses or carries" prong, or under the "in furtherance of . . . possesses" prong. *Id.* Count 4 of the superseding indictment charged that the defendants "knowingly possessed a firearm(s) . . . *during and in relation to and in furtherance of* a drug trafficking crime" in violation of sections "924(c)(1)(A), 924(c)(1)(B)(i), and 924(c)(1)(B)(ii)." (emphasis added).

Haile and Beckford argue that Count 4 in the indictment conflated the two triggers under § 924(c), resulting in a violation of their Sixth Amendment right "to be informed of the nature and cause of the accusation" against them. U.S. Const. amend. VI. They also argue that the indictment violated their Fifth Amendment right to "only be convicted for a crime charged in the indictment." *United States v. Ward*, 486 F.3d 1212, 1226 (11th Cir. 2007) (internal quotation marks omitted)

10

(citing U.S. Const. amend. V).

"Generally, an indictment is sufficient if it: 1) sets forth the elements of the offense in a manner which fairly informs the defendant of the charge against which he must defend and 2) enables him to enter a plea which will bar future prosecution for the same offense." *Belt v. United States*, 868 F.2d 1208, 1211 (11th Cir. 1989). Minor deficiencies in an indictment do not automatically render it constitutionally deficient, *Poirier*, 321 F.3d at 1029, and, "[i]f an indictment specifically refers to the statute on which the charge was based, the reference to the statutory language adequately informs the defendant of the charge." *United States v. Fern*, 155 F.3d 1318, 1325 (11th Cir. 1998).

Here, Count 4 in the indictment specifically referred to § 924(c)(1)(A), which at least put Haile and Beckford on notice of the two triggers for enhanced punishment. *Fern*, 155 F.3d at 1324-25; *Belt*, 868 F.2d at 1211. Further, to clear any confusion for the defendants and the jury, the district court struck the "during and in relation to" language from the indictment.

Haile and Beckford contend that striking the improper language was error because removal of the language lessened the government's burden of proof. We disagree. It was never the government's burden under § 924(c) to prove that the defendants' possession of the gun was "during and in relation to" the crime as well

11

as "in furtherance of" it; rather, the government bore the burden only to prove facts satisfying one of the triggers. Thus, the district court's deletion of "during and in relation to" brought the indictment in line with the specific language of the independent second trigger of § 924(c)(1)(A) and the government's burden of proof under that clause.

Haile and Beckford also argue that removal of the offending language was an impermissible amendment to the indictment because it broadened the charges upon which they could be convicted. But "[i]t is not an amendment to a charge to 'drop from an indictment those allegations that are unnecessary to an offense that is clearly contained within [the indictment].'" *Ward*, 486 F.3d at 1227 (alteration in original) (quoting *United States v. Miller*, 471 U.S. 130, 144 (1985)). Because § 924(c)(1)(A) was cited in the charge, and because the dropped "during and in relation to" language is unnecessary for a conviction under the "in furtherance of" trigger in that statute, there was no impermissible amendment.

## B.

Haile and Beckford assert, in the alternative, that the district court committed reversible error by failing to instruct the jury that, to establish a conviction for machine-gun-possession, the jury must find that (1) the defendant possessed a machine gun and (2) knew the firearm was a machine gun when he

12

possessed it. We review the court's instructions on a charge *de novo*. *United States v. Richardson*, 233 F.3d 1285, 1292 (11th Cir. 2000).

Section 924(c)(1)(B)(ii) provides for a 30-year minimum sentence if the gun a defendant possessed was a machine gun. The district court accordingly instructed the jury that Count 4 required the jury to find that each defendant "knowingly possessed" each firearm, including the M-11 machine gun. Haile and Beckford contend that this instruction is insufficient because the jury was required to find, beyond a reasonable doubt, that the defendants knew the gun they possessed had the characteristics of a machine gun. Specifically, they argue that the Supreme Court's decision in *United States v. O'Brien*, 130 S. Ct. 2169, 2180 (2010), makes such knowledge an element of the offense that the government must prove.

The defendants, however, misunderstand *O'Brien*. In that case, the Supreme Court held that the fact that a firearm was a machine gun was an element of the § 924(c)(1)(B)(ii) offense rather than merely a sentencing enhancement. *O'Brien*, 130 S. Ct. at 2180. In other words, the government must prove beyond a reasonable doubt that the firearm in question was actually a machine gun. *Id.* at 2175-80. *O'Brien* did not hold that a defendant's knowledge that a firearm is a machine gun must also be so proved. And nothing in the text of § 924(c)(1)(B)(ii)

13

makes knowledge of the firearm's characteristics an element of the offense.

Indeed, this court has held that § 924(c)(1)(B)(ii) "does not require proof of particularized knowledge of the weapon characteristics." *United States v. Ciszkowski*, 492 F.3d 1264, 1269 (11th Cir. 2007) (internal quotation marks omitted). Although *Ciszkowski* construed § 924(c)(1)(B)(ii) as a sentencing enhancement — a construction that the Supreme Court in *O'Brien* rejected — *O'Brien* did not expressly overrule, nor did it even mention, *Ciszkowski*. Thus, under our prior-precedent rule, *Ciszkowski*'s holding that "proof of particularized knowledge of the weapon characteristics" is not required remains controlling. *See United States v. Vega-Castillo*, 540 F.3d 1235, 1236 (11th Cir. 2008) ("Under the prior precedent rule, we are bound to follow a prior binding precedent 'unless and until it is overruled by this court en banc or by the Supreme Court.'" (quoting *United States v. Brown*, 342 F.3d 1245, 1246 (11th Cir. 2003)). The government therefore was not required to prove, and the jury did not have to find beyond a reasonable doubt, that Beckford and Haile knew the firearm in question was a machine gun. And, accordingly, the district court's instructions to the jury were not erroneous.

C.

Beckford, but not Haile, contests the sufficiency of the evidence against

him. Beckford concedes that the evidence was sufficient to convict him on the marijuana charges. But he argues that: (1) he was entrapped into committing the cocaine and firearm offenses; (2) the firearms were not possessed in furtherance of a drug-trafficking crime; and (3) he did not knowingly possess a firearm with an obliterated serial number.[2] We review these issues *de novo*, viewing the evidence in the light most favorable to the government and resolving all reasonable inferences and credibility evaluations in favor of the jury's verdict. *United States v. To*, 144 F.3d 737, 743 (11th Cir. 1998).

1.     Entrapment

Beckford argued at trial that he was entrapped into committing the cocaine and firearm charges in the indictment. An entrapment defense consists of two elements: "(1) government inducement of the crime, and (2) lack of predisposition on the part of the defendant." *United States v. Brown*, 43 F.3d 618, 623 (11th Cir. 1995). Where, as here, the defendant argues and the jury rejects an entrapment defense, "our review is limited to deciding whether the evidence was sufficient for a reasonable jury to conclude that the defendant was predisposed to take part in the illicit transaction." *Id.* at 622.

---

[2] In addition, Beckford contends the evidence failed to show that he knew the firearm he possessed had the characteristics of a machine gun. For the reasons discussed above, his argument fails.

15

Here, the jury could reasonably conclude that Beckford was predisposed to engage in the charged conduct. Beckford actively sought a drug supplier, and, once he established rapport with Rodriguez, he and Haile discussed with Rodriguez and Arrugueta the possibility of a cocaine purchase and an exchange of guns for drugs. Although Rodriguez and Arrugueta initiated the conversations about cocaine and firearms, Beckford willingly discussed the topics and voluntarily agreed to purchase cocaine and to supply guns. The morning of his arrest, Beckford told Rodriguez he had "like six [guns] so far," from which a reasonable jury could infer that Beckford was predisposed to possess guns. And he told Arrugueta that he wanted drugs, not money, in exchange for the guns, which shows that he actively proposed to make guns part of the transaction. This evidence, in the aggregate, was sufficient for the jury to reject Beckford's entrapment defense.

2.      Firearm possession "in furtherance of" a drug-trafficking crime

Beckford next argues that the firearms attributed to him in Count 4 were not possessed "in furtherance of" the drug-trafficking crimes because, when police found them, they were stashed in bags in the truck or, in one instance, licensed and carried in the center console. According to Beckford, this indicates that the guns were not part of the drug sale.

16

"To establish that a firearm was possessed 'in furtherance of' a drug trafficking crime, the government must show some nexus between the firearm and the drug selling operation." *United States v. Molina*, 443 F.3d 824, 829 (11th Cir. 2006) (internal quotation marks omitted). This nexus may be established by "accessibility of the firearm," "proximity to the drugs or drug profits, and the time and circumstances under which the gun is found." *Id.* at 829-30 (internal quotation marks omitted). The guns at issue here were in close proximity to the money Beckford intended to use to buy drugs and were brought to the drug purchase. The gun for which Beckford had a license was loaded in the center console, readily accessible from the front seat. The guns were found during a sting operation, throughout the course of which Beckford had discussed his desire to trade guns for drugs. And all of the guns were found in Beckford's truck at the moment he expected to be purchasing drugs in exchange for guns and money. This evidence is sufficient to establish a nexus between all of the guns in the car and the drug transaction.

3.      Possession of a firearm with an obliterated serial number

Lastly, Beckford argues that the evidence was insufficient for the jury to convict him of violating 18 U.S.C. § 922(k) because, although the serial number on one of the SKS rifles in his possession was indisputably obliterated, the

17

government failed to establish that he knew this. Section 922(k) provides:

> It shall be unlawful for any person knowingly to transport, ship, or receive, in interstate or foreign commerce, any firearm which has had the importer's or manufacturer's serial number removed, obliterated, or altered or to possess or receive any firearm which has had the importer's or manufacturer's serial number removed, obliterated, or altered and has, at any time, been shipped or transported in interstate or foreign commerce.

*Id.* Whether a conviction under § 922(k) requires the government to prove beyond a reasonable doubt that the defendant knew at the time he possessed the gun that the serial number was obliterated is an issue of first impression in this circuit. But other circuits have consistently held that knowledge of the obliterated serial number is an element of the offense. *See United States v. Sullivan*, 455 F.3d 248, 261 (4th Cir. 2006); *United States v. Haywood*, 363 F.3d 200, 206 (3d Cir. 2004); *United States v. Abernathy*, 83 F.3d 17, 19 & n.1 (1st Cir. 1996); *United States v. Fennell*, 53 F.3d 1296, 1300-01 (D.C. Cir. 1995); *United States v. Haynes*, 16 F.3d 29, 34 (2d Cir. 1994); *United States v. Hooker*, 997 F.2d 67, 72 (5th Cir. 1993); *see also United States v. Rice*, 520 F.3d 811, 818 (7th Cir. 2008) (finding, based on evidence that the defendant cleaned his guns regularly, that "the jury could have found that he knew the serial number on his [gun] was obliterated").

We join our sister circuits in holding that a defendant's knowledge of the obliterated serial number is an element of the § 922(k) offense. Importantly,

§ 924(a)(1)(B), which governs the penalties for violations of § 922(k), applies only to "knowing[]" violations. 18 U.S.C. § 924(a)(1)(B); *see Haywood*, 363 F.3d at 206 (discussing addition of "knowingly" to § 924(a)(1)(B) in 1986); *Fennell*, 53 F.3d at 1300-01 (same). Thus, for the enhanced penalties to apply under § 922(k), Beckford must have possessed a gun with an obliterated serial number and known the number was obliterated.

The government did not admit any direct evidence of Beckford's knowledge of the obliteration. But generally, "[k]nowledge of defacement of the serial number may be inferred where the defendant has possessed the gun under conditions under which an ordinary man would have inspected [it] and discovered the absence of a serial number." *Sullivan*, 455 F.3d at 261 (citing *United States v. Moore*, 54 F.3d 92, 101 (2d Cir. 1995)). The government contends that Beckford had ample time to gain knowledge of whether the gun had an obliterated serial number.

We disagree. We are not persuaded that the evidence at trial was sufficient even to show that Beckford possessed the gun for a period of time during which an ordinary man would have discovered that the serial number was obliterated. Although the government established that Beckford discussed guns in general before the arrest and that agents found the gun in the flatbed of his truck (out of

his reach) after the arrest, the government put forth no evidence that Beckford actually possessed the gun for any significant length of time.

The government essentially proved only that Beckford had constructive possession of the gun at the time of the arrest. But this constructive possession alone cannot be sufficient to establish Beckford's knowledge of the obliterated serial number because, if it was sufficient, the standard would eviscerate the knowledge element of § 922(k) altogether. Thus, because the government proved only constructive possession, without anything more, it failed to prove, beyond a reasonable doubt, that Beckford had knowledge of the obliterated serial number, and Beckford's conviction on Count 6 must be reversed.

D.

Beckford next contests the district court's failure to instruct the jury on (1) the definition of a machine gun and (2) his defense of outrageous government conduct. We review the court's failure to give a requested instruction for an abuse of discretion. *United States v. Carrasco*, 381 F.3d 1237, 1242 (11th Cir. 2004). The district court's decision not to give such an instruction is an abuse of discretion if: "(1) the requested instruction was a correct statement of the law, (2) its subject matter was not substantially covered by other instructions, and (3) . . . the failure to give [the instruction] seriously impaired the defendant's ability to

defend himself." *Id.*

1. The definition of "machine gun"

At the charge conference, Beckford's counsel asked the court to define "machine gun" for the jury. The district court indicated that it would, but, in fact, never did. Beckford now argues that the district court erred in failing to give this instruction. As the government emphasizes, however, the parties agreed at trial that the gun in question was a machine gun. Both parties referred to the gun as machine gun throughout the trial, including in closing arguments. We need not address this issue because Beckford's concession at trial that the gun was a machine gun constitutes invited error and precludes review of this issue. *See United States v. Brannan*, 562 F.3d 1300, 1306 (11th Cir. 2009) (noting that the doctrine of invited error is implicated when a party induces or invites the district court into making an error).

2. The defense of outrageous government conduct

Beckford also argues that the district court erroneously declined to instruct the jury on his theory that his criminal responsibility for the cocaine and firearm charges was limited due to outrageous government conduct. The proposed jury instruction read, in part, "[t]he defendant may be *acquitted* of any charges in the indictment if the jury determines that his offense conduct relating to that charge

21

was the result of outrageous government conduct." (emphasis added). The instruction cited *United States v. Ciszkowski*, 492 F.3d 1264, 1270 (11th Cir. 2007).

In *Ciszkowski*, this court stated, "[o]utrageous government conduct occurs when law enforcement *obtains a conviction* for conduct beyond the defendant's predisposition by employing methods that fail to comport with due process guarantees." *Id.* (emphasis added) (citing *United States v. Sanchez*, 138 F.3d 1410, 1413 (11th Cir. 1998)). A court may remedy outrageous government conduct by dismissing an indictment or by reversing a conviction. *Sanchez*, 138 F.3d at 1413. But this court has never held that outrageous government conduct could constitute a defense for the jury to consider. Given the lack of binding precedent on whether a jury may consider outrageous government conduct as a defense, we conclude that the district court did not abuse its discretion in declining to give Beckford's proposed jury instruction. *See Beckford v. Dep't of Corr.*, 605 F.3d 951, 961 (11th Cir. 2010) ("The district court did not abuse its discretion when it instructed the jury consistent with our precedent.").

E.

Lastly, Beckford appeals his sentence on the grounds that the 360-month

22

mandatory minimum sentence for possession of a machine gun constitutes cruel and unusual punishment and his 438-month total sentence is substantively unreasonable. We address these in turn.

1.    Cruel and unusual punishment

At sentencing, Beckford's counsel objected to the length of Beckford's sentence, arguing that it was cruel, unusual, and disproportionate to Beckford's culpability. The district court overruled Beckford's objections, and we now review *de novo* whether Beckford's sentence violates the Eighth Amendment's prohibition on cruel and unusual punishment. *United States v. Sanchez*, 586 F.3d 918, 932 (11th Cir. 2009).

The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. Beckford maintains that his mandatory 30-year sentence under § 924(c)(1)(B)(ii), for possession of a machine gun in furtherance of a drug-trafficking crime, is grossly disproportionate to his crime.

In assessing an Eighth Amendment challenge, we must determine whether the sentence imposed was grossly disproportionate to the offense committed and, if so, we "must then consider the sentences imposed on others convicted in the same jurisdiction and the sentences imposed for commission of the same crime in

23

other jurisdictions." *United States v. Raad*, 406 F.3d 1322, 1324 (11th Cir. 2005) (internal quotation marks omitted). "[W]e accord substantial deference to Congress, as it possesses 'broad authority to determine the types and limits of punishments for crimes.'" *Id.* at 1323 (quoting *Solem v. Helm*, 463 U.S. 277, 290 (1983)). "[A] sentence which is not otherwise cruel and unusual does not become so simply because it is mandatory." *Id.* at 1324 (alteration and internal quotation marks omitted).

Given the serious nature of possessing a machine gun in furtherance of drug-trafficking crimes, Beckford's 30-year statutory mandatory minimum sentence imposed under § 924(c)(1)(B)(ii) is not grossly disproportionate to the offense. *See Harmelin v. Michigan*, 501 U.S. 957, 961, 966 (1991) (upholding a life-without-parole sentence when the defendant, a first-time offender, possessed more than 650 grams of cocaine). Beckford attempted to possess and distribute a large quantity of drugs — larger than that in *Harmelin* — and equipped himself with tools for violence. Thus, his sentence was not grossly disproportionate to his offense, and it therefore does not violate the Eighth Amendment.

2.     Substantive reasonableness

In the alternative, Beckford contends that his 438-month sentence is substantively unreasonable because the district court (1) denied his request for a

sentencing reduction based on sentencing factor manipulation and (2) sentenced him above the mandatory minimum of 420 months. "The reasonableness of a final sentence is reviewed only for an abuse of discretion." *United States v. Docampo*, 573 F.3d 1091, 1096 (11th Cir. 2009) (internal quotation marks omitted).

Beckford's 438-month total sentence consisted of 360 months' imprisonment for Count 4; 78 months' imprisonment for each of Counts 1, 2, 3, and 7, each to run concurrently; and 60 months' imprisonment for Count 6, to run concurrently with his 78-month term.

Beckford asserts that the government improperly pressured him to buy more drugs than he originally intended to purchase and to pay for the drugs with guns. The government responds that Beckford has not proved that the government's conduct was so outrageous as to warrant a downward adjustment.

"[S]entencing factor manipulation occurs when the government's manipulation of a sting operation, even if insufficient to support a due process claim, requires that the manipulation be filtered out of the sentencing calculus." *Ciszkowski*, 492 F.3d at 1270. "[T]o bring sting operations within the ambit of sentencing factor manipulation, the government must engage in extraordinary misconduct." *Id.* at 1271. If successful, a sentencing factor manipulation argument "would simply reduce the sentence applied to the defendant's

25

misconduct." *Id.* at 1270.

Although this court has recognized sentencing factor manipulation as an avenue for a sentence reduction, we have never applied it. *Docampo*, 573 F.3d at 1097-98. Instead, we have held that the use of a large amount of fictitious drugs by the government in a sting operation does not amount to sentencing factor manipulation. *Sanchez*, 138 F.3d at 1413-14. We have also held that the government's purchase of crack cocaine, rather than powder cocaine, from a defendant was not sentencing factor manipulation even though the purchase resulted in a longer sentence. *United States v. Williams*, 456 F.3d 1353, 1370-71 (11th Cir. 2006), *abrogated on other grounds by Kimbrough v. United States*, 552 U.S. 85, 93 (2007). Further, we have held that the government did not engage in sentencing factor manipulation when a confidential informant provided a defendant with a firearm equipped with a silencer, the possession of which triggered a mandatory 30-year minimum sentence. *Ciszkowski*, 492 F.3d at 1269-71.

Based on this line of cases, we cannot say that the district court abused its discretion in declining to reduce Beckford's sentence on a theory of sentencing factor manipulation. Even though government agents initiated the conversation about the guns, it was Beckford and Haile who agreed to supply and who brought

the guns to the transaction, just as the defendant in *Ciszkowski* accepted the gun

with a silencer. *Id.* And, similar to *Williams*, although agents offered to supply

the defendants cocaine in addition to marijuana, Beckford did not reject the offer

or express any discomfort with the idea. 456 F.3d at 1370-71. We therefore

decline to overturn the district court's decision regarding Beckford's claim of

sentencing factor manipulation.

Beckford also argues, without specific citations in support, that his sentence

is unreasonable because he was sentenced above the mandatory minimum of 420

months. But Beckford's sentence of 438 months is the lowest within-guideline

sentence he could have received. *See United States v. Talley*, 431 F.3d 784, 788

(11th Cir. 2005) (emphasizing that sentences falling within the applicable

guideline range are ordinarily expected to be reasonable). It is also well below the

statutory maximum life sentence. *See United States v. Gonzalez*, 550 F.3d 1319,

1324 (11th Cir. 2008) (considering the fact that a defendant's sentence falls below

the statutory maximum as an indicator that the sentence is reasonable). Thus,

Beckford's sentence was not unreasonable simply because the district court

imposed a sentence above the statutory mandatory minimum.

## III.

For all of the reasons set forth above, we affirm Haile's conviction. We

27

affirm Beckford's convictions on Counts 1-4 and 7, but we reverse on the Count 6 charge for knowing possession of a firearm with an obliterated serial number. We affirm Beckford's sentence and note that his sentence on Count 6 was to run concurrently with his sentence on the remaining counts, resulting in no change to the 438-month sentence that the district court imposed.

**AFFIRMED in part and REVERSED in part.**