[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-12094
Non-Argument Calendar

_____

D.C. Docket No. 1:11-cr-20540-KMW-1


UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

DANNY PEREZ,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(June 25, 2013)

Before CARNES, BARKETT and KRAVITCH, Circuit Judges.

PER CURIAM:

Danny Perez appeals his convictions for possessing a firearm as a felon, possessing cocaine with intent to distribute, and possessing a firearm in furtherance of a drug-trafficking crime.  After thorough review, we affirm.

I.

In 2011, a grand jury indicted Perez for possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e) (Count 1); possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) (Count 2); and possession of a firearm in furtherance of a drug-trafficking offense, in violation of 18 U.S.C. § 924(c)(1)(A) (Count 3).

Before trial, Perez moved to suppress statements he made when Miami-Dade Police Department officers detained him at the America's Best Inn, a hotel where he lived and worked as a desk clerk.  Notably, although the motion mentioned the contents of two hotel rooms officers searched, Perez did not seek suppression of the contents.  The district court denied the motion, and Perez proceeded to trial.

At trial, several police officers testified about the investigation that led to Perez's arrest.  The officers testified they received an anonymous tip in November 2010 indicating that Perez was selling drugs out of the America's Best Inn and that he had used a firearm to threaten some of his buyers.  Officers conducted surveillance at the hotel, and, on November 9 and 16, they observed Perez (and only Perez) emerge from Room 306 and return to the front desk.  Officers learned

2

that Perez lived across the hall from Room 306, in Room 307.  And they learned he lived there with Nancy Outerino, a manager at the hotel.

On November 16, after seeing Perez exit Room 306, Detective Lazaro Gonzalez approached Perez and identified himself as an officer.  Gonzalez asked Perez for permission to search Rooms 306 and 307.  Perez directed Gonzalez to speak to Outerino, telling Gonzalez that, if she "gives you permission, go ahead. You need to speak with her."  Outerino consented, and the officers proceeded.

Room 306 served as a storage room.  Its key was located at the front desk. When officers opened the door to the room, a meowing cat, sensing danger, scampered out into the hall.  In the room, officers discovered a dominoes box inscribed with the name "Danny."  Near the box was a bin filled with clothing. Along with the clothing, officers found:  ten plastic baggies, each marked with a Superman logo and filled with cocaine (totaling 2.2 grams); a loaded .22 caliber revolver and a box of ammunition; and an arrestee's copy of a Miami-Dade arrest affidavit for Perez.  Room 307 served as Perez's and Outerino's living space. Inside, agents did not find any drugs, guns, or ammunition.  After they searched both rooms, officers arrested Perez.  As the officers took Perez away, he called to Outerino to remember to take care of the cat.

Also at trial, fellow hotel desk clerk Roger Arteaga testified on behalf of the government that, when he answered the telephone instead of Perez while Perez was

3

working, the caller would often hang up. And he testified that, a few times a week when Perez was working, cars would drive up to the hotel and Perez would step outside, speak briefly with the driver, and then return to the desk. Arteaga also said Perez was the only person to request the key to or access Room 306.

The government introduced Perez's six prior Florida state felony convictions for possession of cocaine with intent to distribute, one of which involved guns. At the close of the government's case, Perez moved for a judgment of acquittal, which the district court denied. The court concluded that evidence tied Perez to the drugs and gun in Room 306: the bin, its contents (including the arrest affidavit), and "of course the cat." And the court found the evidence supported his intent to distribute those drugs and to use the gun in furtherance of that offense.

In its case-in-chief, the defense attempted to rebut evidence that Perez owned the cocaine and gun by explaining that others had access to and used Room 306. And the defense called another desk clerk, Hector Cornillot, to testify that he had not received hang-up phone calls or seen Perez engage in the kind of behavior Arteaga described. After the defense closed its case, Perez renewed his motion for a judgment of acquittal, but the court denied it. The jury returned a guilty verdict, and Perez thereafter moved unsuccessfully for a new trial. This is Perez's appeal.

II.

4

Perez challenges his convictions on four grounds:  (1) the district court erroneously denied his motion to suppress evidence seized from Rooms 306 and 307; (2) the court improperly excluded testimony from defense witness Cornillot about government witness Arteaga's bias; (3) the court erred in prohibiting a hotel manager from testifying that another felon employee had access to Room 306; and (4) the evidence presented at trial was insufficient to sustain convictions on Counts 2 and 3.  We address each of these in turn.

### A.

Perez first challenges the district court's admission of evidence seized from Rooms 306 and 307.  Because he failed to seek suppression of this evidence in the district court, we review only for plain error.[1]  *See United States v. Young*, 350 F.3d 1302, 1305 (11th Cir. 2003).  Plain error arises if "(1) error occurred, and (2) the error is plain, (3) affects the defendant's substantial rights, and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Romano*, 314 F.3d 1279, 1281 (11th Cir. 2002).

Perez argues that the physical evidence was inadmissible at trial because officers did not obtain valid third-party consent to search the rooms.  We disagree. Outerino had authority to consent to the search of both rooms.  As hotel manager,

---

[1] Although Perez filed a motion to suppress in the district court, he did not move to suppress the physical evidence found in Rooms 306 and 307.  The government argues this amounts to waiver of the argument but concedes we often review a party's challenge to evidence he did not object to at trial for plain error.  We do so here.

5

she gave valid consent to search Room 306, a storage room.  *See United States v. Mercer*, 541 F.3d 1070, 1074-75 (11th Cir. 2008).  And as a co-tenant, she could consent to a search of Room 307.  *See United States v. Matlock*, 415 U.S. 164, 172 n.7 (1974).  Perez contends he nullified Outerino's consent by clearly refusing to consent himself.  But nothing in the record supports this.  In fact, the record indicates that Perez gave his consent provided Outerino also consented.  Perez therefore cannot show error in the district court's admission of evidence obtained when officers searched Rooms 306 and 307.

## B.

Next, Perez challenges the district court's refusal to permit testimony from two witnesses about facts he argues were material to his defense.  We review a district court's evidentiary rulings for an abuse of discretion, subject to a harmless-error analysis.  *United States v. Gamory*, 635 F.3d 480, 492 (11th Cir. 2011).  "This Court may reverse a district court's evidentiary ruling only if it maintains a definite and firm conviction that the trial court made a clear error of judgment based upon a weighing of the relevant factors."  *United States v. Costa*, 947 F.2d 919, 923 (11th Cir. 1991) (internal quotation marks and alteration omitted).

1.    Bernard Joerg's testimony

Perez first contends the district court erred in refusing to allow him to elicit testimony from another hotel manager, Bernard Joerg, that a second felon worked

at the hotel.  According to Perez, this testimony would have permitted the jury to infer this other hotel employee possessed the cocaine, gun, and ammunition found in Room 306.  On the government's objection, the district court ruled Joerg was not the proper witness through which Perez could elicit testimony about the other employee's conviction.[2]

Perez has not shown the district court abused its discretion in this instance. "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  Fed. R. Evid. 404(b)(1).  Defense counsel told the district court Joerg's testimony was intended to show "[s]omeone else could have put the drugs there," namely, the other employee with a criminal record.  In other words, counsel sought to introduce evidence of the other employee's criminal history to show that employee's bad character, which would suggest it was that employee, not Perez, who committed the crimes for which Perez was charged. This, the district court correctly concluded, was improper propensity evidence under Rule 404(b).

2.    Hector Cornillot's testimony

---

[2]  Although the district court initially expressed skepticism that Joerg's intended testimony was relevant, the court ultimately excluded the evidence on the ground that Joerg was not the proper witness to testify to the criminal history of a person who "is not here, that we don't know about." Thus, Perez's argument that the testimony was indeed relevant is immaterial.

Perez also argues the district court erred in excluding testimony from desk clerk Hector Cornillot about the potential bias of RogerArteaga.  During Perez's case-in-chief, counsel sought to ask Cornillot whether he knew of "a situation" between Perez and Arteaga.  The court interrupted and asked whether Cornillot's answer would involve hearsay.  Counsel explained that Cornillot knew Perez "caught Mr. Arteaga stealing and confronted him," and indicated the testimony would undermine the credibility of Arteaga's testimony.  The court excluded the testimony as hearsay and as barred by Federal Rule of Evidence 608(b).

Perez contends the admissibility of evidence regarding witness bias is not subject to Rule 608 and is limited only by Rule 402's relevance requirement and Rule 403's unfair-prejudice test.  According to Perez, the testimony satisfies these two requirements.  Even assuming, however, that the district court erred in excluding Cornillot's testimony, any error was harmless.  As we explain below, the government presented sufficient evidence to convict Perez even in the absence of Arteaga's testimony.  *See Gamory*, 635 F.3d at 492.[3]

D.

---

[3] Although we "review the record *de novo* when conducting a harmless error analysis, unlike our review of sufficiency of the evidence challenges, in which we view witness credibility in the light most favorable to the government," *United States v. Baker*, 432 F.3d 1189, 1224 (11th Cir. 2005), that distinction in the standard is immaterial to the outcome here because adequate evidence supported Perez's conviction absent Arteaga's testimony under either standard.

8

Finally, Perez challenges the sufficiency of the evidence against him on Counts 2 and 3.[4]  We review *de novo* a district court's denial of a motion for judgment of acquittal on sufficiency grounds, "viewing the evidence in the light most favorable to the government and resolving all reasonable inferences and credibility evaluations in favor of the jury's verdict."  *United States v. Haile*, 685 F.3d 1211, 1219 (11th Cir. 2012), *cert. denied*, 133 S. Ct. 1723-24 (2013); *see also United States v. Yates*, 438 F.3d 1307, 1311-12 (11th Cir. 2006) (*en banc*).

To sustain a conviction for possession of cocaine with intent to distribute (Count 2), the government must establish "(1) knowledge (of one's possession); (2) possession of a controlled substance; and (3) intent to distribute that substance."  *United States v. Woodard*, 531 F.3d 1352, 1360 (11th Cir. 2008) (internal quotation marks omitted).  "All three elements can be proven by either direct or circumstantial evidence."  *United States v. Poole*, 878 F.2d 1389, 1391-92 (11th Cir. 1989).  At trial, Perez disputed all three elements.  On appeal, however, he disputes only the third.  That is, he concedes he knowingly possessed the cocaine but argues the amount he possessed was too small to evidence his intent to distribute.  But the cases Perez cites are distinguishable from his because, in those cases, the amount of drugs was the *only* evidence of the defendants' intent to distribute them.  *See, e.g.*, *Turner v. United States*, 396 U.S. 398, 422-23 (1970)

---

[4]  He does not dispute the sufficiency of evidence against him on Count 1.

(doubting whether the jury would "automatically and unequivocally know" the defendant "was distributing cocaine *simply* from the fact that he had" 14.68 grams (emphasis added)). Here, additional circumstantial evidence supports the jury's conclusion that Perez had intent to distribute. The cocaine was separated into 10 small baggies with a specific logo on them, which Detective Gonzalez testified was consistent with distribution rather than personal use. And, on several occasions on November 9 and 16, Gonzalez saw Perez leave Room 306, where the cocaine was located, before returning to the front desk. This too permitted the jury to infer Perez was selling the drugs he kept in that room.[5] The evidence was sufficient to sustain Perez's conviction on Count 2.

Perez's challenge of his Count 3 conviction – for possession of a firearm in furtherance of a drug-trafficking offense – hinges on the sufficiency of evidence with respect to Count 2. He argues the government presented insufficient evidence of a drug-trafficking offense, but he does not contest his firearm possession. Because, as we discussed above, sufficient evidence supports the jury's verdict on Count 2, sufficient evidence also necessarily supports the jury's finding on Count 3 that Perez engaged in drug-trafficking.

---

[5] Perez also argues that, because the government presented insufficient evidence on Count 2, the jury must have improperly relied on Perez's prior convictions to find the requisite intent to distribute. But the district court gave a limiting instruction to the jury regarding this evidence, and we presume a jury followed instructions the district court provided. *United States v. Brazel*, 102 F.3d 1120, 1145 (11th Cir. 1997). Because we conclude the government did in fact present sufficient evidence, and without anything evidencing the jury's confusion, we cannot agree with Perez's contention that the jury necessarily improperly considered his prior convictions.

III.

For the foregoing reasons, Perez's convictions are

**AFFIRMED.**