[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-15961
Non-Argument Calendar
_____

D.C. Docket No. 1:12-cr-00200-AT-JFK-3


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MOSEZELL KELLY,
a.k.a. Zip,
a.k.a. Zig,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(September 23, 2014)

Before WILSON, ROSENBAUM, and FAY, Circuit Judges.

PER CURIAM:

Mosezell Kelly challenges the substantive reasonableness of his 60-month imprisonment sentence for aiding and abetting the dealing of firearms without a license. We affirm.

## I. BACKGROUND

Beginning in October 2011, the Bureau of Alcohol, Tobacco, Firearms, and Explosives and the Atlanta Police Department ("APD") operated an undercover warehouse in Atlanta, Georgia. During the undercover operation, Kelly and his co-defendants, aided and abetted by each other and others in the business of dealing in firearms without a license, sold firearms to undercover APD officers. From January 18, 2012, through June 26, 2012, the defendants sold approximately 37 firearms and ammunition to undercover officers. Kelly, while under indictment for a state burglary offense, directly sold firearms to an undercover officer and was present during the sale of other firearms to the undercover officer. The undercover officer informed Kelly that the officer had a felony conviction.

In July 2012, a federal grand jury returned an 11-count superseding indictment against Kelly and 6 other defendants. The indictment charged Kelly with aiding and abetting the dealing of firearms without a license, in violation of 18 U.S.C. §§ 922(a)(1)(A) and 2 ("Count 1"), and possessing a firearm while under indictment for burglary in state court, in violation of 18 U.S.C. §§ 922(n) and

2

924(a)(1)(D) ("Count 4").  Kelly pled guilty to both counts without a plea agreement.

Kelly had a total offense level of 25, which included a four-level enhancement, pursuant to U.S.S.G. § 2K2.1(b)(5), for trafficking in firearms based on Kelly's belief he was selling firearms to a convicted felon for shipment to California.  Kelly had a criminal history category of IV.  His offense level of 25 and criminal history category of IV resulted in an advisory Sentencing Guidelines range of 84 to 105 months of imprisonment.  The statutory maximum sentence that could be imposed was 60 months of imprisonment on each count, to run consecutively, for a total of 120 months.  Kelly objected to his four-level enhancement under § 2K2.1(b)(5) for trafficking in firearms and the lack of a minor-role reduction under § 3B1.1.

At sentencing, the government informed the district judge the superseding indictment had identified the firearm in Count 4 incorrectly, and it was dismissing Count 4.  Kelly needed to be sentenced only for his conviction on Count 1.[1] Because of the dismissal of Count 4, the Guidelines range became the statutory maximum, 60 months of imprisonment, below the advisory Guidelines range of 84 to 105 months of imprisonment.

---

[1] The dismissal of Count 4 did not affect the Guidelines calculations.

Kelly argued against the four-level trafficking enhancement under § 2K2.1(b)(5) and asserted the government had included fictitious facts in the undercover operation for the express purpose of increasing his offense level and Guidelines-imprisonment range.  He further argued the government had targeted a low-income, African-American neighborhood during the sting operation.  He specifically requested a 36-month-imprisonment sentence, below the 60-month statutory maximum.  He presented several arguments in mitigation, including the physical and emotional trauma he had suffered in high school from a shooting incident, which had ended his basketball career, and his mother's battle with cancer.

The district judge recognized Kelly's concern about the four-level trafficking enhancement and asked the government:

> [H]as the sentence been jacked up by allowing things to go on longer, adding more twists to the scenario, and unfairly basically putting these defendants in a position where they're facing much larger sentences because of all the fictitious turns?

R. at 1823-24.  The government responded in the negative and argued the defendants' criminal histories, rather than offense-specific enhancements, had increased the sentencing ranges.  The government requested the statutory maximum sentence, based upon the seriousness of the offense and Kelly's extensive criminal history.

4

The district judge overruled Kelly's objections and sentenced him to 60 months of imprisonment, the statutory maximum. The judge stated she would like to see Kelly reunited with his family. Nevertheless, she recognized that Kelly had engaged in very serious, reckless conduct in selling firearms. She was concerned by Kelly's conduct, particularly when he had suffered from gunshot wounds. The judge also noted Kelly was fortunate that the superseding indictment contained an erroneous charge, because the dismissal of that charge had limited the sentence the judge could impose. The district judge found a 60-month sentence was reasonable under the circumstances and recognized both the seriousness of the offense and the disorder of Kelly's life caused by the shooting incident. She further stated Kelly had been given enough opportunities to change his behavior.

On appeal, Kelly argues his 60-month imprisonment sentence is substantively unreasonable because the district judge failed to consider the manipulative role the government played in his crime. He further contends the judge should have placed greater weight on the hardships he had suffered as a result of being robbed and shot when he was in high school.

## II. DISCUSSION

We review the reasonableness of a sentence under a deferential abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 41, 128 S. Ct. 586, 591 (2007). We examine whether a sentence is substantively reasonable in light of the

5

totality of the circumstances and the 18 U.S.C. § 3553(a) factors.  *Id.* at 51, 128

S. Ct. at 597.[2]  The § 3553(a) factors to be considered include (1) the nature and

circumstances of the crime and the history and characteristics of the defendant;

(2) the need for the sentence imposed to reflect the seriousness of the crime, to

promote respect for the law, and to provide just punishment for the crime; (3) the

need to protect the public from further crimes of the defendant; and (4) the

applicable Guidelines range.  18 U.S.C. § 3553(a).

A sentence is substantively unreasonable if it does not achieve the purposes

of sentencing stated in § 3553(a).  *United States v. Pugh*, 515 F.3d 1179, 1191

(11th Cir. 2008).  In addition, a sentence may be substantively unreasonable if a

district judge unjustifiably relied on any one § 3553(a) factor, failed to consider

pertinent § 3553(a) factors, selected the sentence arbitrarily, or based the sentence

on impermissible factors.  *Id.* at 1191-92.  The weight to be accorded any given

§ 3553(a) factor is a matter committed to the sound discretion of the district judge.

*United States v. Clay*, 483 F.3d 739, 743 (11th Cir. 2007).  The party who

challenges the sentence bears the burden of establishing the sentence is

unreasonable.  *United States v. Talley*, 431 F.3d 784, 788 (11th Cir. 2005).

---

[2] Kelly has abandoned any arguments regarding procedural reasonableness.  *United States v. Curtis*, 380 F.3d 1308, 1310 (11th Cir. 2004) (recognizing an appellant abandons an argument not raised in his initial brief on appeal).

6

Sentencing factor manipulation occurs when the government manipulates a sting operation to increase a defendant's potential sentence, such that a sentencing reduction is warranted. *United States v. Haile*, 685 F.3d 1211, 1223 (11th Cir. 2012) (per curiam). A reduction to a defendant's sentence is only warranted, however, if the sting operation involved extraordinary misconduct. *Id.* Although we recognize sentencing factor manipulation as a means for a sentence reduction, we have never applied it. *Id.*; *see, e.g.*, *United States v. Ciszkowski*, 492 F.3d 1264, 1269-71 (11th Cir. 2007) (concluding the government did not engage in sentencing-factor manipulation, when confidential informant provided defendant with firearm equipped with silencer, the possession of which resulted in a mandatory 30-year, minimum-imprisonment sentence); *United States v. Williams*, 456 F.3d 1353, 1370-71 (11th Cir. 2006) (recognizing the purchase of crack cocaine, rather than powder cocaine, is not sentencing-factor manipulation), *abrogated on other grounds by Kimbrough v. United States*, 552 U.S. 85, 128 S. Ct. 558 (2007).

The district judge expressly considered the government's role in the sting operation and Kelly's personal history when imposing the sentence. The judge heard argument from the parties concerning Kelly's contention that the government had targeted a low-income, African-American neighborhood. The judge also noted the undercover officers' use of fictitious facts had increased the

7

applicable Guidelines range.  The officers' use of such facts during the sting operation did not amount to extraordinary misconduct sufficient to warrant a sentence reduction.

The judge further explained a 60-month sentence recognized the hardship Kelly had suffered, because of the earlier shooting, the seriousness of the offense, Kelly's criminal history, and the opportunities Kelly had been given.  Although Kelly challenges the weight the district judge placed upon the government's role and his personal history, we will not reweigh the sentencing factors.  *See Clay*, 483 F.3d at 743.  The dismissal of Count 4, based on citation to an incorrect firearm, was fortunate for Kelly, because it resulted in a maximum sentence that was much lower than the applicable Guidelines range of 84 to 105 month of imprisonment.  Under the totality of the circumstances and the 18 U.S.C. § 3553(a) factors, Kelly's 60-month imprisonment sentence is substantively reasonable.

**AFFIRMED.**