[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-11808
Non-Argument Calendar
_____

D.C. Docket No. 4:13-cr-10031-JEM-2


UNITED STATES OF AMERICA,

                                                        Plaintiff - Appellee,


versus

ANTONIO RODRIGUEZ,

                                                        Defendant - Appellant.


_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(December 31, 2014)

Before MARTIN, JILL PRYOR, and ANDERSON, Circuit Judges.

PER CURIAM:

After a jury trial, Antonio Rodriguez appeals his conviction and sentence for failure to heave to a vessel, in violation of 18 U.S.C. § 2237(a)(1). For the reasons that follow, and after careful review, we affirm.

I.

In October 2013, Mr. Rodriguez and a co-defendant were indicted on one count each of, while operating a vessel, knowingly failing to obey an order by a Federal law enforcement officer to heave to that vessel, in violation of 18 U.S.C. § 2237(a)(1). Both pled not guilty, and the government tried the cases together. The following testimony was adduced at trial.[1]

On the night of September 28, 2013, a Department of Homeland Security ("DHS") Customs and Border Protection officer on a border security patrol airplane spotted two jet skis without navigation lights about 30 nautical miles off the coast of Florida. Because the jet skis were not moving, the officer thought the operators to be in distress. The officer called the United States Coast Guard and relayed the jet skis' position. Then, the jet skis began to move, so the officer directed the Coast Guard to pursue them.

Coast Guard Lieutenant Junior Grade James Heuser was aboard the Coast Guard cutter that received the DHS officer's call. The cutter moved toward the jet

---

[1] Because Mr. Rodriguez mounts a challenge to the sufficiency of the evidence against him, we recite the facts relevant to his conviction in the light most favorable to the jury's verdict. *See United States v. Haile*, 685 F.3d 1211, 1219 (11th Cir. 2012).

skis and, when it was about two miles away, activated its blue law-enforcement lights. Rather than stopping, however, Mr. Rodriguez and his co-defendant rode their jet skis away from the cutter. Coast Guard officers aboard the cutter then deployed a 25-foot "small boat" to pursue the jet skis. Because the jet skis had fled when the cutter activated its blue lights, the officers turned off the lights on both boats until the small boat came close enough to the jet skis to see their wakes. When the small boat activated its blue law-enforcement lights, Lieutenant Heuser used a loud hailer to tell Mr. Rodriguez and his co-defendant to "go over," both in English and Spanish. Again, the jet skis did not stop. They zig-zagged erratically at speeds of more than 30 miles per hour while Lieutenant Heuser and other Coast Guard officers aboard the small boat repeated the call, "stop your vessel, U.S. Coast Guard," in English and Spanish and shone a light on the hull of the boat to illuminate the Coast Guard insignia.

After about three to five minutes of pursuit by the small boat, Mr. Rodriguez and his co-defendant stopped their jet skis. When Coast Guard officers tied the jet skis to the small boat, Mr. Rodriguez admitted he saw the blue lights and heard the boat but thought the boat carried Cuban military, whom Mr. Rodriguez said had fired on the jet skis earlier in the evening. He told Lieutenant Heuser that he and his co-defendant were going camping in the Dry Tortugas but got lost. There was no camping gear aboard the jet skis. Mr. Rodriguez said it had

3

fallen off during their flight from Cuban military fire.  Mr. Rodriguez also said he and his co-defendant were lobster fishing, but there was no lobster-fishing equipment on board either jet ski.  Lieutenant Heuser did find on each jet ski two extra life jackets and two extra five-gallon cans of fuel.  Coast Guard officers also found a satellite phone on Mr. Rodriguez's jet ski.  Mr. Rodriguez stated that he had not used the phone to call for help because it was a "piece of junk," but after the officers requested and received permission to look at the phone, Mr. Rodriguez admitted he had placed calls on it that evening.  Although Mr. Rodriguez told Lieutenant Heuser that the calls were placed to Colombia, in fact they had been placed to locations in Cuba.

The jury found Mr. Rodriguez guilty on the count charged in the indictment. The probation office prepared a presentence investigation report ("PSI") calculating a base offense level of ten, pursuant to U.S.S.G. § 2A2.4.  With no adjustments to that level, and a criminal history category of III, the PSI set Mr. Rodriguez's guidelines range at 10 to 16 months' imprisonment.  At sentencing, the government requested a 16-month sentence, citing the need to deter the dangerous situation Mr. Rodriguez created for Coast Guard officers.  The district court, after stating that he had considered the parties' arguments, the PSI, and the sentencing factors set forth in 18 U.S.C. § 3553(a), imposed a 16-month sentence.

This is Mr. Rodriguez's appeal.

II.

When "the master, operator, or person in charge of a vessel of the United States, or a vessel subject to the jurisdiction of the United States, . . . knowingly fail[s] to obey an order by an authorized Federal law enforcement officer to heave to that vessel," that offense is punishable by law.  18 U.S.C. § 2237(a)(1).  To sustain a conviction for failure to heave to, the government bears the burden of proving that:  (1) the defendant was the master, operator, or person in charge of a vessel that (2) knowingly (3) failed to obey (4) an order by a Federal law enforcement officer to heave to that vessel.  *See id.*  Mr. Rodriguez challenges the sufficiency of the evidence against him on the second and fourth of these elements.

We review the sufficiency of the evidence *de novo*, "viewing the evidence in the light most favorable to the government and resolving all reasonable inferences and credibility evaluations in favor of the jury's verdict."  *United States v. Haile*, 685 F.3d 1211, 1219 (11th Cir. 2012).  Mr. Rodriguez first contends that the government set forth insufficient evidence establishing he knew the Coast Guard was ordering him to heave to, emphasizing that the Coast Guard's small boat did not turn on its blue lights until it was upon the jet skis and noting that he stopped his jet ski shortly after the blue lights were illuminated and the hailer was employed.  This argument, however, ignores evidence the jury heard regarding Mr. Rodriguez's actions before and after the moment the small boat's blue lights

5

flashed.  Coast Guard officers testified at trial that the larger cutter, from which the small boat was deployed, activated its blue lights (easily visible over the distance between the cutter and Mr. Rodriguez) minutes before, at which point Mr. Rodriguez and his co-defendant began to steer their jet skis away from the lights and pick up speed.  Moreover, even after the small boat reached the jet skis and Coast Guard officers activated the blue lights and repeatedly called to the jet ski operators on the hailer, Mr. Rodriguez and his co-defendant fled for a number of minutes, performing evasive maneuvers as they went.  This evidence, contained in the testimony of three Coast Guard officers, was sufficient for the jury to conclude that Mr. Rodriguez knowingly disobeyed the Coast Guard's orders to heave to.

We also find no merit in Mr. Rodriguez's contention that the government failed to establish that the Coast Guard officers intended to and were capable of physically boarding Mr. Rodriguez's jet ski.  Assuming for argument that the statute requires this evidence, which the parties dispute, the government presented it.  Lieutenant Heuser testified that his team — the team that pursued Mr. Rodriguez — was a "boarding team," tasked with boarding vessels in United States territory to conduct safety checks or perform law enforcement operations.  Moreover, Lieutenant Heuser testified that, once Mr. Rodriguez stopped his jet ski, officers tied the vessel to the small Coast Guard boat.  They then searched the jet

6

ski.  This testimony was sufficient for the jury to infer that the Coast Guard officers both intended to board and did in fact board Mr. Rodriguez's jet ski.

## III.

Mr. Rodriguez also appeals his sentence on the grounds that it is procedurally and substantively unreasonable.  We review reasonableness of a sentence for an abuse of discretion.  *See Gall v. United States*, 552 U.S. 38, 51 (2007).  We first must "ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence . . . ." *Id.*  Mr. Rodriguez contends the district court's failure to explain why the sentence it imposed was appropriate under the § 3553(a) factors warrants a remand for resentencing.  The court did, however, state that it "considered the statements of all the parties, the presentence report which contains the advisory guidelines[,] and the statutory factors as set forth in 18 U.S.C. section 3553(a)."  And, because this Court has held that "'nothing . . . requires the district court to state on the record that it has explicitly considered each of the section 3553(a) factors or to discuss each of [them],'" under our binding precedent, Mr. Rodriguez's argument is foreclosed.  *United States v. Talley*, 431 F.3d 784, 786 (11th Cir. 2005) (quoting *United States v. Scott*, 426

F.3d 1324, 1329 (11th Cir. 2005)), *abrogated on other grounds by Rita v. United States*, 551 U.S. 338 (2007).

We now turn to the substantive reasonableness of Mr. Rodriguez's sentence. A substantively reasonable sentence is one that achieves the purposes of sentencing set forth in 18 U.S.C. § 3553(a). A district court's sentence is unreasonable when it (1) "fails to afford consideration to relevant factors that were due significant weight," (2) "gives significant weight to an improper or irrelevant factor," or (3) "commits a clear error of judgment in considering the proper factors" by considering proper factors but balancing them unreasonably. *United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (*en banc*). We do not automatically presume a guidelines-range sentence to be reasonable, but we ordinarily expect it to be. *See United States v. Hunt*, 526 F.3d 739, 746 (11th Cir. 2008). Mr. Rodriguez points to the Florida on-land offense of resisting arrest without violence,[2] which carries a maximum sentence of 1 year of imprisonment, to suggest his 16-month sentence for committing a similar offense at sea was unreasonable. But he overlooks that the maximum sentence for failing to heave to under § 2237(a)(1) is 5 years' imprisonment, and he received a sentence considerably lower than that maximum and within the guidelines range for Mr. Rodriguez's criminal history.

---

[2] *See* Fla. Stat. §§ 843.02, 775.082(4)(a).

8

Further, the district court stated that it considered the government's argument that 16 months would be an appropriate sentence to deter Mr. Rodriguez and others who might engage in high-speed, low-visibility chases that endanger Coast Guard officers. These circumstances map appropriately onto the § 3553(a) factors that require an analysis of, among other factors, the "nature and circumstances of the offense" and the "need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law," and "to afford adequate deterrence to criminal conduct . . . ." 18 U.S.C. § 3553(a)(1), (a)(2)(A), (B). Thus, we cannot say that the district court's within-guidelines sentence of 16 months was substantively unreasonable.

## IV.

For the foregoing reasons, we affirm Mr. Rodriguez's conviction and sentence.

**AFFIRMED.**