[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-10110
Non-Argument Calendar
_____

D.C. Docket No. 2:12-cr-00235-MEF-TFM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

KEVIN LEVAN ELMORE,

Defendant-Appellant.

_____

No. 14-10111
Non-Argument Calendar
_____

D.C. Docket No.  2:12-cr-00235-MEF-TFM-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

STACY RODREKUS CALLOWAY,
a.k.a. Bud,

                                                                Defendant-Appellant.

_____

Appeals from the United States District Court
for the Middle District of Alabama
_____

(October 16, 2014)

Before TJOFLAT, ROSENBAUM and ANDERSON, Circuit Judges.

PER CURIAM:

Stacy Rodrekus Calloway and co-defendant Kevin Levan Elmore appeal their total sentences.[1] Calloway pled guilty to one count of conspiracy to distribute and possess with intent to distribute cocaine base, one count of possessing cocaine base with intent to distribute it, one count of using, carrying, possessing, or brandishing a firearm in furtherance of and during the course of a drug trafficking crime, and one count of using a cellular phone in committing, causing, and facilitating the drug conspiracy. Elmore also pled guilty to the conspiracy count

---

[1] Twelve individuals in addition to Calloway and Elmore were named as defendants in the 57-count indictment in this case. Calloway pled guilty to Count 1, conspiracy to distribute controlled substance; Count 25, possession with intent to distribute controlled substance; Count 37, possession of a firearm during the commission of a drug trafficking offense; Count 39, use of a communication facility to facilitate a drug trafficking offense. He was sentenced to concurrent prison terms of 110 months on Counts 1 and 25 and 48 months on Count 39, and a consecutive sentence of 60 months on Count 37.

Elmore pled guilty to Count 1 and Count 44, use of a facility to facilitate a drug trafficking offense. He was sentenced to concurrent prison terms of 136 months on Count 1 and 48 months on Count 44.

2

and to one count of using a cellular phone in committing, causing, and facilitating the drug conspiracy.  The district court sentenced Calloway to a total custodial term of imprisonment of 170 months and Elmore to a total custodial term of 136 months.  We affirm.[2]

## I.

Calloway argues that the district court erred  by finding that he maintained a premises for the purpose of distributing narcotics, resulting in a two-point offense-level enhancement under U.S. Sentencing Guidelines Manual [hereinafter U.S.S.G.] § 2D1.1(b)(12).  He argues that he did not have a possessory interest in the premises, nor did he exercise control over it, as his use of the property was limited to regular narcotics transactions.

That a defendant maintained a premises for the distribution of drugs is a finding of fact that we review for clear error.  *See United States v. Barrington*, 648 F.3d 1178, 1195 (11th Cir. 2011).  We will not reverse such finding unless we are left with "a definite and firm conviction that a mistake has been committed." *United States v. Crawford*, 407 F.3d 1174, 1177 (11th Cir. 2005) (quotation omitted).

---

[2] We note that both Calloway and Elmore entered into written plea agreements that included sentence appeal waiver provisions.  Nevertheless, under the circumstances, we decline to enforce the sentence appeal waivers.  *See United States v. Bushert*, 997 F.2d 1343, 1351 (11th Cir. 1993).

Section 2D1.1(b)(12) was new to the November 2011 Guidelines Manual, and it implemented a directive from the Fair Sentencing Act, which directed the Sentencing Commission to add a two-level enhancement "as generally described in . . . (21 U.S.C. [§] 856)." Fair Sentencing Act of 2010, Pub. L. No. 111-220, § (6)(2), 124 Stat. 2372, 2373 (2010). The "disorderly house" statute makes it illegal to "knowingly open, lease, rent, use, or maintain any place, whether permanently or temporarily, for the purpose of manufacturing, distributing, or using any controlled substance." 21 U.S.C. § 856(a)(1). Section 2D1.1(b)(12) of the Guidelines adds a two-level enhancement "[i]f the defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance," including storage of a controlled substance for the purposes of distribution. U.S.S.G. § 2D1.1(b)(12) & comment. (n.17). Application Note 17 to § 2D1.1 provides that the court should consider "whether the defendant held a possessory interest in . . . the premises" and "the extent to which the defendant controlled access to, or activities at, the premises." U.S.S.G. § 2D1.1, comment. (n.17). The application note further states that

> [m]anufacturing or distributing a controlled substance need not be the sole purpose for which the premises was maintained, but must be one of the defendant's primary or principal uses for the premises, rather than one of the defendant's incidental or collateral uses for the premises. In making this determination, the court should consider how frequently the premises was used by the defendant for manufacturing or distributing a controlled substance and how

4

frequently the premises was used by the defendant for lawful purposes.

*Id.*

We have interpreted 21 U.S.C. § 856(a)(1), which criminalizes maintaining a drug-involved premises, as holding that the "critical elements" of the offense are "(1) knowingly exercising some degree of control over the premises; (2) knowingly making the place available for the use alleged in the indictment; and (3) continuity in pursuing the manufacture, distribution, or use of controlled substances." *United States v. Clavis*, 956 F.2d 1079, 1090 (11th Cir. 1992). In *Clavis*, we rejected the argument that regular use of a premises "as a site from which to distribute cocaine is, by itself, sufficient" to constitute "maintaining" a premises, but held instead that "[a]cts evidencing such matters as control, duration, acquisition of the site, renting or furnishing the site, repairing the site, supervising, protecting, supplying food to those at the site, and continuity" constituted evidence of "maintaining." *Id.* at 1091.

The facts in *Clavis* concerned a "complex, long-running cocaine conspiracy," and multiple defendants raised an issue with the sufficiency of the evidence of their § 856(a)(1) convictions. *Id.* at 1083. There were a total of four rented premises involved, and the activity occurred over a seven-month period. *Id.* at 1083–85. We affirmed one defendant's conviction, noting that his acts at two

5

houses that were used as the original point for temporary warehousing and distribution to street sellers had "day-to-day continuity" and went "beyond mere distribution," including participation in the chain of supply and moving inventory when a raid was impending. *Id.* at 1083–84, 1091. We also affirmed another defendant's conviction where he rented a house and used it to manufacture cocaine base, originate shipments of and store cocaine, and maintain records. *Id.* at 1084–85, 1091–93. We found insufficient evidence where a third defendant did not meet all three of the elements. *Id.* at 1093–94. He was identified as "maybe" having picked up a package of cocaine from one of the houses, he was present at a different house during a raid, and there was no evidence that he lived in the raided house or exercised dominion and control over the premises and the drugs. *Id.* at 1094.

The record establishes that Calloway used the premises both for drug storage and as a common site for narcotics transactions; he also controlled access to the premises. Accordingly, the district court did not clearly err by applying the two-level enhancement for maintaining a premises for maintaining a premises for the purpose of distributing narcotics. *See Barrington*, 648 F.3d at 1195; *Clavis*, 956 F.2d at 1090.

## II.

Calloway expressly challenges his total sentence as substantively unreasonable, and asserts that the government engaged in sentencing factor manipulation by engineering a § 924(c) charge against him when the undercover officer brought extra cash for drugs to an arranged gun buy in order to manipulate him into possessing a gun in furtherance of a drug offense.  Absent the drugs, the gun sale may have been wholly legal, but the government's manipulation subjected him to a mandatory consecutive five-year sentence, putting great pressure on him to plead guilty.

We review a district court's decision to reduce a sentence based on sentencing factor manipulation for abuse of discretion, as we do any appeal of the reasonableness of a total sentence.  *Gall v. United States*, 552 U.S. 38, 41, 128 S. Ct. 586, 591, 169 L. Ed. 2d 445 (2007); *United States v. Haile*, 685 F.3d 1211, 1223 (11th Cir. 2012).  We have never vacated a sentence based on alleged sentencing factor manipulation.  *See United States v. Docampo*, 573 F.3d 1091, 1097–98 (11th Cir. 2009) (reiterating that courts in this circuit have yet to "recognize[] a defense of sentencing factor manipulation or [to] permit[] its application") (citations omitted).

"[S]entencing factor manipulation occurs when the government's manipulation of a sting operation, even if insufficient to support a due process claim, requires that the manipulation be filtered out of the sentencing calculus."

7

*United States v. Ciszkowski*, 492 F.3d 1264, 1270 (11th Cir. 2007). To show

sentencing factor manipulation that will reduce a defendant's sentence, "the

government must engage in extraordinary misconduct." *Haile*, 685 F.3d at 1223

(quotation marks omitted) (rejecting sentencing factor manipulation argument of a

defendant who agreed to supply guns and brought guns to the transaction, even

though government agents initiated the discussion about guns). Sentencing factor

manipulation focuses on the government's conduct. *Docampo*, 573 F.3d at 1097.

The party raising the defense of sentencing factor manipulation bears the "burden

of establishing that the government's conduct is sufficiently reprehensible to

constitute sentencing factor manipulation." *Ciszkowski*, 492 F.3d at 1271.

The substantive reasonableness of a total sentence is determined in light of

the totality of the circumstances, and we will not vacate a total sentence as

substantively unreasonable unless we are left with the definite and firm conviction

that the district court clearly erred in weighing the § 3553(a) factors and imposed a

total sentence outside the range of reasonable sentences. *United States v. Turner*,

626 F.3d 566, 573 (11th Cir. 2010). Under this standard, the district court does not

need to impose the same sentence we would have given; it need only impose a

sentence that is within the range of reasonableness. *United States v. Irey*, 612 F.3d

1160, 1190–91 (11th Cir. 2010) (en banc). The party challenging the total

sentence has the burden of demonstrating that the sentence is unreasonable in light

8

of the record and factors outlined in § 3553(a). *United States v. Talley*, 431 F.3d 784, 788 (11th Cir. 2005).

A district court is required to impose a total sentence "sufficient, but not greater than necessary, to comply with the purposes" listed in § 3553(a), including the need to reflect the seriousness of the offense; promote respect for the law; provide just punishment for the offense; deter criminal conduct; protect the public from the defendant's future criminal conduct; and provide the defendant with educational or vocational training, medical care, or other treatment. *See* 18 U.S.C. § 3553(a)(2). In imposing a particular sentence, the court must also consider the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the applicable guideline range, the pertinent policy statements of the Sentencing Commission, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to victims. *Id.* § 3553(a)(1),(3)–(7).

In considering the § 3553(a) factors, the court does not have to discuss each one explicitly. *United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008). An acknowledgement that the court has considered the defendant's arguments and the § 3553(a) factors will suffice. *Id.* We will defer to the court's judgment regarding the weight given to the § 3553(a) factors, unless the court made a clear error in judgment and imposed a sentence that lies outside the range of reasonable

9

sentences dictated by the facts of the case. *Id.* Furthermore, the fact that a sentence is below the statutory maximum is indicative of its reasonableness. *See id.*

The district court did not abuse its discretion in denying Calloway's motion for a downward variance based on sentencing factor manipulation, because he has not met his burden to show that the government's conduct was sufficiently reprehensible. Calloway's conduct demonstrated that he was involved in both firearms and drugs. *See Haile*, 685 F.3d at 1223. Nor has Calloway shown that his total sentence is substantively unreasonable because the court imposed a total sentence that was greater than necessary to achieve the purposes of sentencing.

## III.

Elmore argues that the district court clearly erred by finding that he was a leader or organizer in the conspiracy, because, although he engaged in limited recruiting, he was solely the distributor for the conspiracy and did not exercise organizational control.

Under the Sentencing Guidelines, a four-level role enhancement applies if: (1) the defendant was an organizer or leader of a criminal activity; and (2) the criminal activity involved five or more participants or was otherwise extensive. U.S.S.G. § 3B1.1(a). Factors that the court should consider at sentencing when applying this enhancement include: (1) the exercise of decisionmaking authority;

(2) the nature of participation in the commission of the offense; (3) the recruitment of accomplices; (4) the claimed right to a larger share of the fruits of the crime; (5) the degree of participation in planning or organizing the offense; (6) the nature and scope of the illegal activity; and (7) the degree of control and authority exercised over others.  *Id.* § 3B1.1, comment. (n.4).  Evidence that the defendant recruited and instructed participants in the conspiracy is sufficient to support a leadership enhancement.  *United States v. Ndiaye*, 434 F.3d 1270, 1304 (11th Cir. 2006).  "Section 3B1.1 requires the exercise of some authority in the organization, the exertion of some degree of control, influence, or leadership."  *Id.* (citation omitted).

Elmore does not challenge the court's findings that the conspiracy involved five or more people and that he recruited at least seven people into his distribution network within the conspiracy, which findings supported the aggravated role enhancement.  *See* U.S.S.G. § 3B1.1, comment. (n.4); *Ndiaye*, 434 F.3d at 1304.  As the sole supplier for multiple street-level distribution networks, he also exercised organizational control for the conspiracy by deciding how and when to branch out the conspiracy.  *See Ndiaye*, 434 F.3d at 1304.  In sum, the court did not clearly err in applying the aggravated role enhancement.

For the foregoing reasons, Calloway's and Elmore's sentences are

AFFIRMED.

11