[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-15043
Non-Argument Calendar
_____

D.C. Docket No. 4:12-cr-00017-WTM-GRS-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

LEONARDO LEVETTE MCMILLAR,
a.k.a. L.T.,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia
_____

(May 15, 2013)

Before MARCUS, MARTIN and KRAVITCH, Circuit Judges.

PER CURIAM:

Leonardo Levette McMillar appeals his sentence of 180-months imprisonment. He raises two issues on appeal. First, he claims that the district court improperly applied a four-level sentence enhancement for gun trafficking pursuant to § 2K2.1(b)(5) of the United States Sentencing Guidelines. Second, he argues the sentencing judge erred by rejecting his argument that undercover agents manipulated the sentencing factors. After careful consideration, we affirm the sentence imposed by the district court.

## I.

First, McMillar argues that his sentence enhancement for gun trafficking was not proper. The Sentencing Guidelines provide for a four-level enhancement "[i]f the defendant engaged in the trafficking of firearms . . . ." United States Sentencing Guidelines § 2K2.1(b)(5) (Nov. 2011). The commentary to § 2K2.1(b)(5) explains that "[s]ubsection (b)(5) applies . . . if the defendant . . . knew or had reason to believe that such conduct would result in the transport, transfer, or disposal of a firearm to an individual" whose possession or receipt of the gun would be unlawful, or who intended to unlawfully use or dispose of the gun. U.S.S.G. § 2K2.1, comment. (n.13). McMillar argues that he had no reason to believe that he was selling a gun to a person who would unlawfully possess or

2

receive it.[1]  He also argues that he had no reason to believe that he was selling a gun to a person who would unlawfully use or dispose of it.

"[I]n assessing a district court's imposition of an offense-level enhancement, we review the court's findings of fact for clear error and its application of the Sentencing Guidelines de novo."  United States v. Lopez-Garcia, 565 F.3d 1306, 1313 (11th Cir. 2009) (quotation marks omitted).  At the sentencing hearing, the government introduced into evidence a video recording of McMillar selling drugs to undercover agents, and another video of McMillar negotiating the sale of firearms to undercover agents.  During these exchanges, the undercover agents told McMillar that they regularly sold guns in New York for a profit.  McMillar offered to sell the undercover agents an AK-47 rifle, but the undercover agents said they wanted smaller guns, because the New York buyers preferred guns that could be concealed.  The undercover agents also told McMillar that they could purchase a gun for $300, and sell it in New York for $600.

The sentencing judge found "that the facts support the conclusion that the defendant had reason to believe that his sale of the firearms would result in the transportation, transfer or disposal of the firearm to individuals whose possession

---

[1] The commentary to § 2K2.1(b)(5) defines an "[i]ndividual whose possession or receipt of the firearm would be unlawful," as including an individual with a prior conviction for a crime of violence, a controlled substance offense, or a misdemeanor crime of domestic violence, or who was under a "criminal justice sentence" at the time of the offense.  U.S.S.G. § 2K2.1, comment. (n.13).  McMillar says that he had no reason to believe that he was selling a gun to a person in any of these categories.  Because we conclude that McMillar had reason to believe that the gun would be unlawfully used or disposed of, we need not address this argument.

3

or receipt of the firearm would be unlawful." Because the undercover agents previously bought drugs from McMillar; told McMillar that they wanted to sell guns that could be concealed; and informed McMillar that they would sell the guns for double the price in New York, the sentencing judge did not clearly err in finding that McMillar knew or had reason to believe they intended to unlawfully use or dispose of the guns. Because McMillar "engaged in the trafficking of firearms," the sentencing judge properly applied the four-level enhancement.

## II.

Second, McMillar argues the sentencing judge abused his discretion by rejecting McMillar's argument of sentencing factor manipulation. "Sentencing factor manipulation occurs when the government's manipulation of a sting operation, even if insufficient to support a due process claim, requires that the manipulation be filtered out of the sentencing calculus." United States v. Haile, 685 F.3d 1211, 1223 (11th Cir. 2012) (quotations marks and alterations omitted), cert. denied, No. 12-673, 2013 WL 1285325 (Apr. 1, 2013). The concept of sentencing factor manipulation exists to protect defendants from "the opportunities that the sentencing guidelines pose for prosecutors to gerrymander the district court's sentencing options and thus, defendant's sentences." United States v. Sanchez, 138 F.3d 1410, 1414 (11th Cir. 1998) (quotation marks omitted). However, "[t]he standard for sentencing factor manipulation is high." United

States v. Ciszkowski, 492 F.3d 1264, 1271 (11th Cir. 2007).  A sting operation must involve "extraordinary misconduct" to warrant a reduction in the defendant's sentence.  United States v. Haile, 685 F.3d at 1223 (quotation marks omitted).

We review a district court's decision to reduce a sentence based on sentencing factor manipulation for abuse of discretion.  See id.  McMillar argues that the government engaged in sentencing factor manipulation when the undercover agents voluntarily explained they were selling the guns in New York.  McMillar contends this information was offered for the sole purpose of enhancing his sentence.  The government responds that the agents made these statements to lend credibility to the operation, and stresses that McMillar's burden in establishing extraordinary misconduct is "high."

We have explained that government conduct must be "reprehensible" to warrant a sentence reduction based on sentencing factor manipulation, because "[g]overnment-created reverse sting operations are recognized and useful methods of law enforcement investigation."  United States v. Ciszkowski, 492 F.3d at 1271.  We have also explained that when undercover agents solicit transactions with "a willing and predisposed offender [it] does not necessarily constitute misconduct."  Id.  For this reason, we have held that sentencing factor manipulation did not occur when a confidential informant gave a defendant a gun with a silencer, even though the silencer triggers a mandatory thirty-year sentence.  Id.  Similarly, we rejected

5

the sentencing factor manipulation argument of defendants "who agreed to supply and who brought the guns to the transaction" even though "government agents initiated the conversation about the guns." United States v. Haile, 685 F.3d at 1223. Under our precedent, the fact that undercover agents told McMillar they would re-sell the guns in New York does not rise to the level of reprehensible or extreme misconduct. Thus, the sentencing judge did not abuse his discretion in rejecting McMillar's argument of sentencing factor manipulation.

III.

For these reasons, we affirm the district court's sentence.

**AFFIRMED**.